**UNITED STATES of America,**
**Plaintiff,**

v.

**PHILIP MORRIS USA INC.,**
**f/k/a Philip Morris Inc.,**
**et al., Defendants.**

**No. CIV.A.99–2496(GK).**

United States District Court,
District of Columbia.

June 1, 2004.

**88**

Sharon Yvette Eubanks, Renee Brooker, Stephen Dudley Brody, U.S. Department of Justice, Washington, DC, for Plaintiff.

Alfred McDonnell, Arnold & Porter, Denver, CO, Amy L. McGinnis, Amy Elizabeth Ralph, Anne McBride Walker, Duane J. Mauney, Floyd E. Boone, Jr., James Miller Rosenthal, Jeanna Maria Beck, Jonathan Louis Stern, Kendall Millard, Kevin M. Green, Leslie Wharton, Melissa L. Marglous, Michael R. Geske, Murray R. Garnick, Nick Malhotra, Peter Thomas Grossi, Jr., Ryan David Guilds, Sharma Jnatel Simmons, Sharon L. Taylor, Stacy J. Pollock, Susan Louise Lyndrup, Brian K. Esser, Arnold & Porter, Jane E. Chang, Jay L. Levine, Matthew Campbell, Robert M. Rader, Thomas M. Stimson, Timothy M. Broas, Christopher J. Cullen, Winston & Strawn LLP, Geoffrey T. Wright, Jonathan Redgrave, Patrick L. Hubbard, Paul Sommer Ryerson, Peter John Biersteker, Robert Francis McDermott, Jr., Karen O'Brien Hourigan, Jones Day, Harold K. Gordon, Jones, Day, Reavis & Pogue, John Buchanan Williams, William M. Bailey, Collier Shannon Scott, PLLC, David Mendelson, Dawn D. Marchant, Karen McCartan DeSantis, Kenneth N. Bass, Kirkland & Ellis LLP, Rebecca I. Ruby, Goodwin Procter, LLP, William Charles Hendricks, III, King & Spalding, Edward Craig Schmidt, Matthew David Schwartz, Thompson Coburn, LLP, Fred W. Reinke, Clifford Chance US, LLP, Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Arnon D. Siegel, Lawrence Saul Robbins, Roy T. Englert, Jr., Robbins, Russell, Englert, Orseck & Untereiner, William Salvatore D'Amico, Chadbourne & Parke, Bruce G. Merritt, Judah Best, Kevin C. Lombardi, Steven Klugman, Debevoise & Plimpton, Clausen Jr. Ely, James Alexander Goold, Joseph A. Kresse, Keith Allen Teel, Covington & Burling, Washington, DC, Ashley Cummings, Hunton & Williams, Dan H. Willoughby, Leign Ann Dowden, King & Spalding, Atlanta, GA, Ben M. Germana,

Herbert M. Wachtell, Jeffrey M. Wintner, Steven M. Barna, Wachtell, Lipton, Rosen & Katz, C. Ian Anderson, Davis, Polk & Wardwell, James Lewis Brochin, Theodore V. Wells, Jr., Paul, Weiss, Rifkind, Wharton & Garrison, Lauren J. Bernstein, Winston & Strawn, Aaron H. Marks, Daniel R. Benson, Julie R. Fischer, Leonard A. Feiwus, Marc E. Kasowitz, Nancy E. Straub, Kasowitz, Benson, Torres Friedman, L.L.P., Demetra Frawley, Simpson Thatcher & Barlett, Mary Elizabeth McGarry, Michael V. Corrigan, Bruce G. Sheffler, David L. Wallace, F. John Nyhan, Garyowen P. Morrisroe, Jessica L. Zellner, Timothy M. Hughes, Lawrence Edward Savell, Chadbourne & Parke, LLP, David Runtz, Dennis H. Hranitzky, Joseph P. Moodhe, Steven S. Michaels, Debevoise & Plimpton, New York, NY, Bradley E. Lerman, Dan K. Webb, Elizabeth D. Jensen, Jeffrey Wagner, Kevin J. Narko, Luke A. Palese, Ricardo E. Ugarte, Thomas J. Frederick, Winston & Strawn, David M. Bernick, Douglas G. Smith, Michelle H. Browdy, Stephen R. Patton, Steven D. McCormick, Kirkland & Ellis, Chicago, IL, Cindy L. Gantnier, Erik D. Nadolink, Patricia M. Schwarzschild, Richard H. Burton, Cheryl Grissom Ragsdale, Christy L. Henderson, Michele B. Scarponi, Hunton & Williams, Richmond, VA, Daniel C. Jordan, Hunton & Williams, McLean, VA, Seth Barrett Tillman, Newark, NJ, Richard P. Cassetta, Thompson Coburn, LLP Louis, MO, David B. Alden, Elizabeth P. Kessler, Ivan C. Smith, Scott C. Walker, Jones, Day, Reavis & Pogue, Columbus, OH, Lisa M. Sheppard, Womble, Carlyle, Sandridge & Rice, PLLC, Winston–Salem, NC, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA., Minneapolis, MN, Paul Crist, Randal S. Baringer, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, Paul Lamont McDonald, Philadelphia, PA, Bruce D. Ryder, J. William Newbold, James M. Cox, Michael B. Minton, Richard Paul Cassetta, Richard P. Cassetta, Thompson Coburn LLP, St. Louis, MO, Paige Q. Szajnuk, Thomas A. Duncan, Shook, Hardy & Bacon, Kansas City, MO, Melodie M. Mabanta, Robinson Woolson, P.A., Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

KESSLER, District Judge.

## I. INTRODUCTION

On April 15, 2004, Special Master Levie issued Report and Recommendation # 155 ("R & R # 155"), recommending that the Court grant the Government's Motion to Compel Production of the Foyle Memorandum and order Defendant British American Tobacco (Investments) Limited ("BATCo") to produce the document immediately. Upon consideration of R. & R # 155, BATCo's Objection, the Government's Opposition, BATCo's Reply, the applicable case law, and the entire record herein, the Court **overrules** BATCo's objection and **adopts in part** R & R # 155.[1]

## II. BACKGROUND

In R & R # 155, the Special Master considered once again the Government's request for production of the Foyle Memorandum, a document written by Andrew Foyle, a partner at the English law firm of Lovell White Durrant ("Lovells"), who represented both BATCo and its then wholly-owned Australian subsidiary, W.D. & H.O. Wills ("Wills"). R & R # 155 at 2.[2] The

---

1. The Special Master's findings of facts and conclusions of law are reviewed *de novo.* Fed.R.Civ.P. 53(g)(3)-(4).

2. The issues surrounding the Foyle Memorandum have been extensively litigated both here and before the Court of Appeals. It is not

Foyle Memorandum contains advice to Wills regarding modification of its document retention policy in light of increasing litigation against tobacco companies in the United States and Australia. *United States v. Philip Morris*, 347 F.3d 951 (D.C.Cir.2003). The document's existence was brought to the Government's attention because it was discussed and quoted at length in a previously sealed opinion which was released by the Supreme Court of Victoria, Australia in March, 2002. *See id.*

After BATCo failed to produce the document, Special Master Levie issued oral Report and Recommendation # 55, which stated that "because Lovells has a copy of the Foyle Memorandum ... that memorandum is deemed within the control and possession of BATCo." R & R # 55 (adopted by Order # 183, entered July 2, 2002). During the two years that the Government has been trying to obtain the Foyle Memorandum, there have been two appeals to the Court of Appeals. The second decision remanded the case to this Court, which referred it to the Special Master to consider "whether any of BATCo's three Objections covered the Foyle Memorandum; whether waiver was an appropriate sanction if no Objection applied; and whether, if an Objection did apply, it should be overruled, in which event BATCo must have the opportunity to log its privilege claim." *Philip Morris*, 347 F.3d, at 954. R & R # 155 sets forth two bases for compelling production of the Foyle Memorandum: BATCo's waiver of privilege through its abuse of the discovery process and the crime-fraud exception to assertions of privilege.[3]

necessary to repeat all the background, facts, and procedural history in detail.

3. Because the Court finds that BATCo has waived all privilege with respect to the Foyle

## III. BATCO HAS WAIVED ITS CLAIMS OF PRIVILEGE OVER THE FOYLE MEMORANDUM

BATCo raises three Objections to production of the Foyle Memorandum: the Guildford Objection, Third Party Objection, and Foreign Objection. The Court concludes, in agreement with the Special Master, that none of these Objections apply. Given the entirety of BATCo's conduct pertaining to production of the Foyle Memorandum, the Court further concludes that its conduct has been so inexcusable that any privilege it might have is deemed waived.

### A. BATCo's Guildford Objection Does Not Apply to the Foyle Memorandum

BATCo's Guildford Objection states:

BATCo objects to the Comprehensive Requests to the extent that the discovery sought *is obtainable from* ... the Guildford Depository .... *[D]ocuments from BATCo files generated prior to August 18, 1994 which are responsive* to the Comprehensive Requests *can be found at the Guildford Depository* .... BATCo objects to the Comprehensive Requests to the extent they may purport to require BATCo to conduct an enormously expensive, duplicative and unduly burdensome review of *documents that BATCo has already made available* by production into the Guildford Depository. BATCo will not produce *documents located in the Guildford Depository* for discovery and inspection outside the Guildford Depository.

Memorandum, it need not address the Special Master's finding that the crime-fraud exception applies.

R & R # 155, at 25 (emphasis added). Because the Guildford Objection, on its face, applies only to documents which actually were produced into the Depository and the Foyle Memorandum was not so produced, the Special Master concluded that the Guildford Objection does not apply.

The Objection states that all responsive pre–1994 documents are "located in the Guildford Depository," and that, therefore, the documents sought were "already made available" to the Government "by production into the Guildford Depository." There is no dispute that the Foyle Memorandum was never placed into the Guildford Depository. As the Foyle Memorandum was not "obtainable from," "made available" at, or "located in" the Guildford Depository—explicit requirements for application of the Guildford Objection—it is clear that the Guildford Objection can not be read to cover the Foyle Memorandum.[4]

## B. BATCo's Third Party Objection Does Not Apply to the Foyle Memorandum

■ BATCo's Third Party Objection states that BATCo will not "produce documents in the possession of a third party or a non-party which are not in the possession, custody, or control of BATCo." R & R # 155, at 7–8. This Court has already ruled that, "as of February, 2002, there is no question ... that the [Foyle Memorandum] was in the possession, custody, and control of BATCo." Mem. Op. to Order # 183, at 3. Based on that ruling, the Special Master concluded that, even if prior to February, 2002 BATCo was not under an obligation to search third parties

for responsive documents, "at that point, if not before, BATCo had an affirmative obligation to produce or log the document," and therefore the Third Party Objection did not apply. *See* R & R # 155, at 27.

BATCo objects to the Special Master's findings, arguing that the applicability of its Third Party Objection to documents in law firm files has already been affirmed by this Court in Order # 488 (adopting R & R # 132). BATCo's Obj., at 1. That Order denied the Government's motion seeking production of responsive documents "located at [D]efendants' representative law firms" because they were not in the possession, custody, or control of Defendants. *See* Mem. Op. to Order # 183, at 3. However, BATCo ignores the definitive distinction between the Foyle Memorandum, which was within BATCo's control as of February, 2002 although it was also located at its law firm, and the documents at issue in R & R # 132 and Order # 183, which were located at Defendants' law firms *but* were not within any Defendant's control. *See* R & R # 132, at 40 n. 22. BATCo erroneously interprets Order # 488 to suggest that the Third Party Objection applies to all law firm documents, regardless of whether the party itself had possession, custody, or control of the documents. However, a party's possession, custody, or control of a document is the crucial question for application of the Objection. Accordingly, the Third Party Objection does not apply to the Foyle Memorandum because it was and is in BATCo's possession, custody, and control.

---

4. The Court agrees with the Special Master's conclusion that the "discovery process would [not] be served by allowing a party to object to a valid document production request on the basis that the documents sought were already available to the requesting party (where, as here, in fact, not all requested documents were available), and then permitting the objecting party to rest on that objection without insuring it was sufficient." R & R # 155, at 26.

### C. BATCo's Foreign Objection Does Not Apply to the Foyle Memorandum

■ BATCo's Foreign Objection states that BATCo would not produce documents "pertaining to the manufacture, advertising, marketing, promotion, or sale of tobacco products not sold in the United States or activities of any kind undertaken for markets outside the United States." R & R # 155, at 4. The Foyle Memorandum refers to "[t]he potential and substantial problem that would face [BATCo] in the event that any discovery made in Australia of BATCo's research could be used by future plaintiffs in other jurisdictions especially the USA." *McCabe v. British American Tobacco Australia (Services) Ltd.*, 2002 VSC 73 (Supr. Ct. of Victoria at Melbourne, March 22, 2002) (Austl.), *rev'd sub nom. British American Tobacco Australia Services Ltd. v. Cowell*, [2002] VSCA 197 (Supr. Ct. of Victoria—Ct. App. Dec. 6, 2002) (Austl.), (discussing at length and revealing the existence of the Foyle Memorandum).

BATCo objects to the Special Master's conclusion that the Foreign Objection does not apply because the Memorandum specifically addresses commercial activities within the United States.[5] BATCo argues that the Objection must apply because of the disjunctive nature of its plain language—i.e., the use of the word "or" means that BATCo may meet the requirements of the Objection by *either* test. *See* BATCo's Obj., at 3. Thus, according to BATCo, while the Memorandum may not qualify for the Objection under the first test because it is not a "document pertaining to the manufacture, advertising, marketing, promotion, or sale of tobacco products not sold in the United States," it does

qualify under the second test because it is a "document pertaining to activities of any kind undertaken for markets outside the United States," namely litigation in Australia, which is a "market outside the United States." *See id.* at 3–4. However, BATCo's strained interpretation ignores the fact that, by providing legal advice about document management policies undertaken to minimize litigation risks, particularly in the United States, the Memorandum also addresses the United States' market. Moreover, BATCo's argument that its Foreign Objection covers documents having *any* relationship to a market outside the United States would produce the untenable result that virtually all of its documents would be subject to the Foreign Objection—BATCo is, after all, based in England. Accordingly, the Court concludes that the Foreign Objection does not apply to the Foyle Memorandum.

### D. Waiver Is an Appropriate Sanction for BATCo's Inexcusable Conduct

■ The Court of Appeals directed that if none of the three Objections were found to apply, then this Court should determine if BATCo waived its privilege as to the Foyle Memorandum. *See Philip Morris*, 347 F.3d, at 954. "[W]aiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *Id.* Finding BATCo guilty of inexcusable conduct, the Special Master concluded that waiver of all claims of privilege over the Memorandum was an appropriate sanction. *See* R & R # 155, at 28–30.

BATCo's actions in the course of its dogged fight against release of the Foyle

---

5. It should be noted that BATCo did not initially assert that this Objection applied to the Foyle Memorandum. *See* R & R # 155, at 28.

Memorandum constitute inexcusable conduct. The parties exchanged Comprehensive Requests for Production on August 22, 2001. The final date for completion of document production—whether by virtue of objection, logging, or production—was February 1, 2002. See Order # 51, at 27. By February, 2002, as this Court held in Mem. Op. to Order # 183, at 3, BATCo was in possession, custody, and control of the Foyle Memorandum. Yet, it had not been produced, objected to, or logged. It was only by pure accident—the release of the *McCabe* decision—that the Government even learned of the existence of the Foyle Memorandum. Upon this discovery in March, 2002, the Government made repeated requests for production of the Memorandum. During the next two months, despite its obligation to produce or log the Memorandum, BATCo did neither and never raised any of its three current Objections as a basis for its refusal to do so. Only when the document was the subject of a teleconference with the Court, at least two teleconferences with the Special Master, and two Reports and Recommendations, did BATCo finally proffer these three Objections as a basis for refusing to produce or log the Foyle Memorandum. In light of this record of dilatoriness and delay, the Court concludes that the course of BATCo's conduct is an inexcusable effort to subvert the discovery process.

BATCo argues that, despite any delay or failure on its part with respect to the Objections, privilege cannot be waived because "[w]aiver is not automatic, particularly if the party reasonably believed that its objections applied to the document." *Philip Morris,* 347 F.3d at 954. Viewed in context, however, this Court cannot conclude that BATCo's behavior was simply that of a litigant withholding a document based upon a reasonable belief that it was covered by these Objections. BATCo refused to produce or log the document for two months before it finally raised these Objections. Moreover, the Guildford and Third Party Objections border on the frivolous; the Foreign Objection does not fare much better.[6] Thus, the Court finds BATCo's failure to locate, log, and object in a timely fashion to the Memorandum was an intentional and knowing attempt to evade its discovery obligations.[7] Accordingly, waiver of any applicable privilege is an appropriate sanction.

## IV. CONCLUSION

For the foregoing reasons, the Court overrules BATCo's objection and adopts in part R & R # 155 (finding waiver of privilege as to the Foyle Memorandum, but not adopting R & R # 155's finding that the crime-fraud exception overrules any privilege).

An **Order** will accompany this opinion.

---

**6.** As the Special Master succinctly summarized:
> (1) the Guildford Objection could only apply to the Foyle Memorandum if the document was held at Guildford; BATCo counsel conceded that it could not be located at the Guildford Depository; (2) the Third Party Objection could only apply to the Foyle Memorandum if the document was in the possession, custody, or control of a third party; as of February, 2002 the Foyle Memorandum "was in the possession, custody, and control of BATCo;" (3) by its own

terms, the Foreign Objection could not apply to the Foyle Memorandum, and even BATCo did not initially assert that this Objection applied to the document.
R & R # 155, at 28.

**7.** The Special Master set forth at length his concerns and unanswered questions about the two-month delay from the Government's first request in March, 2002 for the Foyle Memorandum to Lovells' conclusion that it had been produced jointly for BATCo and Wills. *See* R & R # 155, at 30.

**94**

## ORDER # 557

Before the Court is Report and Recommendation # 155 ("R & R # 155"), recommending that the Court grant the Government's Motion to Compel Production of the Foyle Memorandum and order Defendant British American Tobacco (Investments) Limited ("BATCo") to produce the document immediately. Upon consideration of R & R # 155, BATCo's Objection, the Government's Opposition, BATCo's Reply, the applicable case law, and the entire record herein, it is this 1st day of June, 2004:

**ORDERED** that Report and Recommendation # 155 be and hereby is **adopted in part**; and it is

**FURTHER ORDERED** that the Government's Motion to Compel Production of the Foyle Memorandum be and hereby is **granted**; and it is

**FURTHER ORDERED** that BATCo's claims of privilege be and hereby are **deemed waived** with respect to the Foyle Memorandum.